**CLOSED**

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HESTER TYNES and MARY PETTI, individually and as representatives of the CLASS of participants in the Employees' Improved Retirement Plan of the Hospital Center at Orange, | : : : : : : | Civil Action No. 04-2725 (JAP) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| PENSION BENEFIT GUARANTY CORPORATION, COMMISSIONER OF INTERNAL REVENUE, THE HOSPITAL CENTER AT ORANGE, ORANGE MOUNTAIN HEALTHCARE, INC., CATHEDRAL AFFILIATED GROUP OF ORANGE, INC., CATHEDRAL HEALTHCARE SYSTEM, INC., THE ARCHDIOCESE OF NEWARK, and THE EMPLOYEES' IMPROVED RETIREMENT PLAN OF THE HOSPITAL CENTER AT ORANGE, | : : : : : : : : : : : | |
| Defendants. | : : | |

APPEARANCES:


RICHARD D. BROWN
GREEN & SAVITS, LLC
35 AIRPORT ROAD
SUITE 350
MORRISTOWN, NJ 07960

(973) 695-7777
Email: njerisa@aol.com

*Attorneys for Plaintiffs Hester Tynes and May Petti, individually and as representatives of the Class of participants in the Employees' Improved Retirement Plan of the Hospital Center at Orange*

SANDRA A. GARRICK
PENSION BENEFIT GUARANTY CORPORATION
OFFICE OF GENERAL COUNSEL
1200 K STREET, NW
SUITE 340
WASHINGTON, DC 20005
202-326-4020 x6008
Email: garrick.sandra@pbgc.gov

*Attorneys for Defendant Pension Benefit Guaranty Corporation*

LAWRENCE P. BLASKOPF
UNITED STATES DEPARTMENT OF JUSTICE
PO BOX 227
BEN FRANKLIN STATION
WASHINGTON, DC 20044
(202) 514-9642
Email: lawrence.p.blaskopf@usdoj.gov

*Attorneys for Defendant Commissioner of Internal Revenue*

CHARLES A. REID, III
DRINKER BIDDLE & REATH
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932-1047
(973) 360-1100
Email: charles.reid@dbr.com

MICHAEL CHARLES ZOGBY
DRINKER, BIDDLE & REATH, LLP
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932
973-549-7209

2

Email: michael.zogby@dbr.com

*Attorneys for Defendants The Hospital Center at Orange, Orange Mountain Healthcare, Inc., Cathedral Affiliated Group of Orange, Inc., Cathedral Healthcare System, Inc., and Employees Improved Retirement Plan of the Hospital Center at Orange*

CHARLES M. CARELLA
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
5 BECKER FARM ROAD
ROSELAND, NJ 07068
(973) 994-1700
Email: cmcarella@carellabyrne.com

*Attorneys for Defendant Archdiocese of Newark*

PISANO, District Judge

Plaintiffs Hester Tynes and Mary Petti, seeking to proceed individually and as representatives of a class of participants in the Employees' Improved Retirement Plan of the Hospital Center at Orange, filed a Complaint on June 14, 2004 against the Pension Benefit Guaranty Corporation, the Commissioner of Internal Revenue, the Hospital Center at Orange, Orange Mountain Healthcare, Inc., the Cathedral Affiliated Group of Orange, Inc., Cathedral Healthcare System, Inc., the Archdiocese of Newark, and the Employees' Improved Retirement Plan of the Hospital Center at Orange (collectively, "Defendants").  Plaintiffs' challenge the legality of the classification of the Employees' Improved Retirement Plan of the Hospital Center at Orange as a "church plan" for purposes of the Employee Retirement Income Security Act ("ERISA") as well as treatment of the plan in light of such classification.  Because, *inter alia*, the Commissioner of Internal Revenue is reevaluating the classification determination at the core of this action and no denial of benefits has occurred, the Court finds that this matter is not yet ripe for adjudication.  Because this matter does not satisfy a fundamental requirement of justiciability, the Court is compelled to *sua sponte* dismiss Plaintiffs' Complaint without prejudice.

## I.  BACKGROUND[1]

Plaintiffs were employees of The Hospital Center at Orange (the "Hospital").  While employed at the Hospital, named plaintiffs and others similarly situated earned vested pensions from Employees' Improved Retirement Plan of the Hospital Center at Orange (the "Plan").

---

[1] The Court assumes the veracity of Plaintiffs' allegations strictly for the purposes of this decision.

4

Compl. ¶¶ 1, 12.  The Hospital was a secular not-for-profit hospital until, according to Plaintiffs,

it was taken over by the Archdiocese of Newark (the "Archdiocese") and/or its healthcare

holding companies in 1998.  Compl. ¶ 4.  While the Hospital was a secular not-for-profit

hospital, the Plan was insured against insolvency under ERISA by the Pension Benefit Guaranty

Corporation (the "PBGC").  Following the take-over of the Hospital by, as alleged by Plaintiffs,

the Archdiocese and/or its health-care holding companies, the Commissioner of Internal Revenue

(the "Commissioner") issued a letter ruling in January 2003 determining that the Plan was a

"church plan" exempt from ERISA.  Compl. ¶¶ 8-11.  Pension insurance was terminated.[2]

Compl.¶ 10.  A year later, the Archdiocese closed the Hospital with a $20 million to $30 million

pension shortfall.  (Robert Westreich letter (Oct. 12, 2004)). However, as the Court was informed

during a June 13, 2005 hearing in this matter, neither the named Plaintiffs nor anyone similarly

situated has requested pension benefits from the Plan to which that person was entitled and been

denied any such benefits.  Moreover, counsel for the Commissioner has represented that

adminsitrative proceedings concerning the classification the Plan as a "church plan" are on-

going.  (*See, e.g.,* Transcript of Hearing (Nov. 17, 2004); Lawrence P. Blaskopf letter (Feb. 11,

2005)).  During the June 13, 2005 hearing, the Court also was informed of previously-filed,

related state court litigation, which is stayed, in which Plaintiffs assert a breach of contract claim

---

[2] The effective date of termination of the Plan's insurance appears to be in dispute. Plaintiffs allege that the Plan was insured until 2003.  Compl. ¶ 8.  Similarly, PBGC admits that the Plan "was insured by the PBGC under Title IV of ERISA from 1974 to 2003" and that the "Plan is no longer insured by PBGC after the Commissioner's ruling."  PBGC Answer ¶¶ 8, 10. However, the Hospital, Orange Mountain Healthcare, Inc., Cathedral Affiliated Group of Orange, Inc., Cathedral Healthcare System, Inc., and Employees Improved Retirement Plan of the Hospital Center at Orange allege that the Plan was only subject to ERISA until January 16, 1998. Hospital, *et al.*, Answer ¶¶ 8-9.  The Archdiocese disclaims any relevant knowledge. Archdiocese Answer ¶¶ 8-11.

for damages.

Plaintiffs' Complaint alleges that (1) the exemption of "church plans" from ERISA violates the First Amendment's Establishment Clause; (2) the Plan does not meet the requirements of 26 U.S.C. § 414(e) and the Commissioner's exemption decision must be vacated; and (3) due to express promises in the Plan documents, the failure to elect continuing coverage under 26 U.S.C. 410(d) is a breach of duty actionable under ERISA or New Jersey law. Compl. ¶¶ 17-19. Plaintiffs seek: "class certification; a declaration that ERISA's church exemption is unconstitutional; an Order declaring that the Commissioner's determination that the defendant Plan is a church plan is void; an Order directing defendants to take all measures necessary to insure plaintiffs' pensions through the PBGC; and award of damages, costs, interest and counsel fees' and such other relief as the Court deems ju [*sic.*]." Compl. at 3. Plaintiffs clarified by letter to the Court that they seek from the Commissioner "only injunctive relief." (Robert Westreich letter (Oct. 12)). Plaintiffs emphasized that, with respect to the Commissioner, they "challenge 29 U.S.C. 1321(b)(3) as a violation of the Establishment Clause" and that they "ask only the return of our insurance." (Robert Westreich letter (Oct. 12)).

In August and September 2004, all of the Defendants other than the Commissioner answered the Complaint. In October 2004, the Commissioner moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), alleging *inter alia* that the Commissioner is entitled to sovereign immunity. Plaintiffs have opposed the Commissioner's motion. This matter was stayed on January 4, 2005 upon the representation that the Commissioner would be reconsidering the classification of the Plan as a "church plan"; the stay ultimately was terminated on April 15, 2005.

## II.  DISCUSSION

The Third Circuit "has recognized that considerations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003).  The court presumes that it lacks jurisdiction "unless the contrary appears affirmatively from the record." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (citation omitted).

The ripeness doctrine functions "to determine whether a party has brought an action prematurely . . . and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."[3] *Peachlum*, 333 F.3d at 433 (citation omitted).  In the context of agency action, "the requirement of ripeness is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *New Jersey Hosp. Assoc. v. United States*, 23 F. Supp. 2d 497, 502 (D.N.J. 1998) (internal quotation and citation omitted).

In analyzing ripeness, a court should look to (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration."[4]  *Abbott Labs.*

---

[3] The Third Circuit has stated that "[i]n some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *see also Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.3 (stating that "regardless whether the ripeness doctrine has a prudential component, it seems clear that it is at least partially grounded in the case or controversy requirement.") (citation omitted).

[4] The Third Circuit advanced an alternative, three-part test, which focuses on "(1) the adversity of the parties' interests; (2) the conclusiveness of the judgment; and (3) the utility of the

*v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430

U.S. 99 (1977).  In the context of a challenge to adminsitrative action, "[w]hether a question is fit

for judicial review depends upon factors such as whether the agency action is final; whether the

issue presented for decision is one of law which requires no additional factual development; and

whether further administrative action is needed to clarify the agency's position . . . ."  *Nextel*

*Communications of the Mid-Atlantic, Inc. v. City of Margate*, 305 F.3d 188, 193 (3d Cir. 2002)

(quotation and citation omitted); *see also Philadelphia Fed'n of Teachers*, 150 F.3d at 323

(indicating that factors for a court's consideration under the fitness inquiry include:  "whether the

issues presented are purely legal, as opposed to factual[;] the degree to which the challenged

action is final[;] . . . whether the claim involves uncertain and contingent events that may not

occur as anticipated or at all; the extent to which a claim is bound up in the facts; and whether the

parties to the action are sufficiently adverse").  In evaluating the hardship to the parties of a

denial of judicial review, the court should consider whether "the challenged action creates a

'direct and immediate' dilemma for the parties."  *Philadelphia Fed'n of Teachers*, 150 F.3d at

323 (*quoting Abbott Labs.*, 387 U.S. at 152).  Prudential factors for a court's consideration,

particularly in a post-enforcement context, include the extent to which postponing federal judicial

---

judgment."  *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.4.  The Third Circuit has clarified
that the three-part test is "a refinement of the Supreme Court's test" and that the factors for a
court's consideration are merely organized differently than in the two-part test.  Moreover, the
Third Circuit has employed both tests since the creation of the three-part test, and may apply the
test for which the "framework better accommodates [the] analysis" in a given case.  *Id.* (applying
two-part test).  The three-part test "is tailored to address *pre-enforcement* actions" in the context
of requests for declaratory judgment.  Because the instant matter is not in the posture of a pre-
enforcement challenge, which may raise a concern "that a person will merely comply with an
illegitimate statute rather than be subjected to prosecution", the framework of the two-part *Abbott
Labs.* test better accommodates the analysis.  *Peachlum*, 333 F.3d at 436; *see also Philadelphia
Fed'n of Teachers*, 150 F.3d at 323 n.4.

action would have the advantage of permitting a state court or an administrative agency additional opportunities to construe a challenged provision, to finalize a decision, or to clarify a position on a challenged, discretionary prescription.  *Peachlum*, 333 F.3d at 436.

### A.  The Fitness of the Issues

Each of Plaintiffs' claims is grounded in the designation of the Plan as a "church plan" by the Commissioner and the consequent exemption of the Plan from ERISA, the effects of which include most pertinently the termination of insurance formerly provided by PBGC.  Applying the factors used by courts to evaluate ripeness to the case at bar, this Court concludes that Plaintiffs' claims are not fit for adjudication at this time and thus will dismiss Plaintiffs' Complaint without prejudice.

First, the process that Plaintiffs challenge is not yet "final."  In the context of ripeness review, "[t]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."  *Nextel*, 305 F.3d at 193 (quotations and citations omitted).  Where adminsirative agency action is at issue, a court "must weigh heavily the need to protect agencies from judicial interference until they have completed their work and the concrete effect upon plaintiffs can be determined."  *New Jersey Hosp. Assoc.*, 23 F. Supp. 2d at 503; *see also Peachlum*, 333 F.3d at 436.  Here, no Plaintiff or similarly situated individual who is entitled to benefits under the Plan has been denied any such benefits.  While it is true that the Commissioner determined that the Plan is a "church plan" for purposes of ERISA, the Commissioner has represented to this Court that it is presently reevaluating that determination.  (Lawrence P. Blaskopf letter (Feb. 11, 2005)); *cf. Nextel*, 305

F.3d at 193.  The possibility thus remains that the Commissioner will withdraw its earlier

determination that the Plan is a "church plan" following this reevaluation, which negates its

finality.  *Cf. Nextel*, 305 F.3d at 193.  Accordingly, "intervention by this Court at this juncture of

the proceedings between plaintiff and [the Commissioner] would inappropriately interfere with

any further adminsitrative action that might be taken by [the Commissioner]."  *New Jersey*

*Hosp.*, 23 F. Supp. 2d at 503; *see also Peachlum*, 333 F.3d at 436.

      Moreover, further adminsitrative action is necessary to clarify the Commissioner's

position.  The Commissioner's classification of the Plan as a "church plan" is the foundation for

each of Plaintiffs' claims.  A withdrawal of that classification by the Commissioner would

plainly impact Plaintiffs' Complaint as pled.  Indeed, if the Commissioner reclassified the Plan,

Plaintiffs may well have new and different claims to address and deferral thus may inure to the

benefit of Plaintiffs as well.  (*See, e.g.,* Richard D. Brown letter (February 11, 2005)).  What, if

any, viable claims Plaintiffs may ultimately have can only be determined after the Commissioner

renders a final determination.  Accordingly, the Commissioner should be "given the opportunity

to clarify its position in this case."  *Nextel*, 305 F.3d at 193 (quotations and citation omitted); see

also *New Jersey Hosp.*, 23 F. Supp. 2d at 502 (noting that ripeness serves in part "to protect

agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties").

      The foregoing factors in the fitness analysis weigh strongly in favor of allowing the

adminsitrative process to go forward.  In addition, consideration of the pending state court

litigation referenced above likewise supports the conclusion that the action before this Court is

not yet ripe for review because the outcome of that state court litigation could "alter[] or

dissolve[]" questions before this Court. *Cf. Crestar Mortgage Corp. v. Peoples Mortgage Co.*, *Inc.*, 818 F. Supp. 816, 820 n.5 (E.D. Pa. 1993) (holding that mortgage buyer's indemnity claim was not ripe prior to foreclosure sale clarifying, *inter alia*, amount of any deficiency, and stating: "Federal ripeness doctrine also counsels against adjudication of questions that might be altered or dissolved by further action in state court"). Accordingly, the Court concludes that the issues presented are not yet fit for decision by this Court.

Other factors for the Court's consideration are not sufficient to alter this result. For example, while certain of Plaintiffs claims may be predominantly legal, it cannot be said that the issues are "purely legal" or that the "issue presented for decision is one of law which requires no additional factual developments." *See Nextel*, 305 F.3d at 193; *Philadelphia Fed'n of Teachers*, 150 F.3d at 323. Moreover, "even the presence of a purely legal question is not enough, of itself, to render a case ripe for judicial review, not even as to that issue." *Philadelphia Fed'n of Teachers*, 150 F.3d at 325. Rather, plaintiffs also must demonstrate that they will suffer a direct and immediate hardship from withholding of judicial review. *Cf. id.* at 325 (applying principle in the pre-enforcement context). The only fitness factor that appears to weigh solidly in favor of a finding of fitness is the adversity of the parties' interests. Because considerations of the finality of the Commissioner's action and the necessity of further action to clarify the Commissioner's position counsel so strongly in favor of deferral and are not clearly outweighed by other factors the Court may consider, the Court concludes that Plaintiffs' claims are unfit for judicial review at this time.

### B.  The Hardship to the Parties

As to the hardship to the parties of withholding judicial consideration, the Third Circuit has "stated that in order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant."  *Nextel*, 305 F.3d at 194 (quotations and citation omitted).  Here, as noted above, while the Plan is no longer insured by PBGC, no Plaintiff or similarly situated individual eligible to receive benefits under the Plan has been denied any such benefits.  At best, Plaintiffs could assert that the uncertainty as to the insurance status of the Plan exposes them to hardship in the form of being unable to anticipatorily and prudently arrange their fiscal affairs.  However, the Third Circuit has cast doubt on whether such uncertainty constitutes a cognizable hardship for purposes of ripeness review.  *Philadelphia Fed'n of Teachers*, 150 F.3d at 326 (finding that no plaintiff suffered a sufficiently "direct and immediate" injury to satisfy ripeness).  Furthermore, the Third Circuit has also found allegations of hardship in the form of "time and expense, as well as the possibility of further litigation" to be insufficient to overcome a determination of unfitness.  *Nextel*, 305 F.3d at 194.  Consequently, this Court finds that the hardship to the parties of postponing judicial consideration of this matter is slight.  *Cf. Binker v. Commonwealth of Pennsylvania*, 977 F.2d 738, 753 (3d Cir. 1992) (finding hardship to be "slight" where a threat of hardship was "largely abstract" because there was "no indication that the funds would be denied in the manner predicted").  Finally, as noted above, Plaintiffs initiated litigation in state court prior to the commencement of the action in this Court and Plaintiffs remain free to prosecute that state court litigation.  Thus it appears that no hardship that is sufficiently direct, immediate, and significant to surmount the prudential interests in deferral will be sustained by Plaintiffs or others similarly

12

situated if judicial intervention is withheld at this time.

## IV.  CONCLUSION

After evaluation of the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review, this Court has determined that the claims asserted in Plaintiffs' Complaint are not ripe.  Accordingly, Plaintiffs' Complaint is hereby dismissed without prejudice.

_____          s/ Joel A. Pisano_____
                                   JOEL A. PISANO, U.S.D.J.


DATED: August 2, 2005

Orig:     Clerk
cc:       All parties
          File

13